IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Matt Fredenburg, et al.,<br><br>　　　　　Plaintiffs,<br>　v.<br>County of Santa Clara, et al.,<br><br>　　　　　Defendants. | NO. C 07-04412 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF MILPITAS, PETE PROLO AND DEREK YAMAMURA'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION AGAINST DEFENDANT PROLO** |

## I. INTRODUCTION

Matt Fredenburg, individually and as guardian *ad litem* for his three minor children, A.F., E.F. and M.F. ("the Children"),[1] and Kim Fredenburg (collectively, "Plaintiffs") bring this action against the County of Santa Clara ("Santa Clara"), Yasmina Letona ("Letona"), Alicia Cortez[2] ("Gonzales"), Sharon Burgan ("Burgan"), the City of Milpitas ("Milpitas"), Officers Pete Prolo ("Prolo") and Derek Yamamura ("Yamamura"), alleging, *inter alia*, violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983, intentional infliction of emotional distress and the false imprisonment of the Children.

Presently before the Court are Defendants Milpitas, Prolo and Yamamura's ("Moving Defendants") Motion for Summary Judgment and Plaintiffs' Motion for Summary Adjudication

---

[1] The Children have been identified solely by their initials throughout this litigation in an effort to protect their privacy.

[2] After the filing of this action, Defendant Alicia Cortez changed her name to Alicia Gonzales. (Declaration of Robert Powell in Opposition to Defendant City of Milpitas, et al.'s Motion for Summary Judgment ¶ 2, hereafter, "Powell Decl.," Docket Item No. 46.)

Against Defendant Prolo.[3] The Court conducted a hearing on April 13, 2009.[4] Based on the papers submitted to date and oral argument, the Court GRANTS in part and DENIES in part Defendants Milpitas, Prolo and Yamamura's Motion for Summary Judgment and DENIES Plaintiffs' Motion for Summary Judgment as to Defendant Prolo.

## II. BACKGROUND

### A. Undisputed Facts

On August 9, 2006, Kim Fredenburg left her home during the afternoon to run errands, including a shopping trip to a Goodwill store in Milpitas, California.[5] Kim Fredenburg brought her youngest child, A.F., who was seven months old at the time, with her and left her sons M.F., eight years old at the time, and E.F., two years old at the time, alone in her home.[6] Kim Fredenburg left A.F. in her car while she shopped at the Goodwill store. The temperature outside was roughly 91°F. (Id.)

That afternoon, Defendant Prolo responded to a 9-1-1 call about a screaming child who was left inside an unattended car. (Gilbert Decl, Ex. A at 3-4.) Defendant Prolo reached into the car through a partially rolled down window and found that A.F. was hot but not sweating. (Id., Ex. A at 4.) Based on his belief that A.F. could be suffering from heat exhaustion and that she had been left in the car for a minimum of 25 minutes, Defendant Prolo removed A.F. from the car and took her to an air conditioned restaurant to await paramedics. (Id.)

---

[3] (Defendants Milpitas, Prolo and Yamamura's Motion for Summary Judgment, hereafter, "Defendants' Motion," Docket Item No. 38; Plaintiffs' Motion for Summary Adjudication Against Defendant Prolo, hereafter, "Plaintiffs' Motion," Docket Item No. 55.)

[4] Since the evidence presented with Plaintiffs' Motion is identical to the evidence presented with the Moving Defendants' Motion, the Court considers both Motions together and thus, VACATES the June 8, 2009 scheduled hearing on Plaintiffs' Motion.

[5] (Defendants' Motion at 2-3; Plaintiffs' Opposition to Defendant City of Milpitas, Prolo and Yamamura's Motion for Summary Judgment at 6, hereafter, "Opposition," Docket Item No. 46.)

[6] (Declaration of Kevin E. Gilbert in Support of Motion for Summary Judgment, Ex. A at 4-5, hereafter, "Gilbert Decl.," Docket Item No. 38.)

2

Defendant Yamamura arrived at the restaurant as back up for Defendant Prolo. (Gilbert Decl., Ex. A at 5.) When Kim Fredenburg returned to her vehicle, Defendant Yamamura spoke with her and discovered that she was A.F.'s mother. (Id., Ex. B at 140-41.) Kim Fredenburg told Defendant Prolo that she had forgotten A.F. was in the car, and that she had two other children at home, ages eight and two, who were being watched by a neighbor. (Id., Ex. A at 5, Ex. B at 142-43.) When Kim Fredenburg arrived at the Milpitias Police Department ("police station"), she informed Defendant Prolo that M.F. and E.F. were actually home alone. (Id., Ex. A at 6.) Sergeant King, a Milpitas police officer, was dispatched to Kim Fredenburg's home, where he took M.F. and E.F. into custody and brought them to the police station. (Id., Ex. A at 9.)

Defendant Prolo interviewed Kim Fredenburg at the police station. (Gilbert Decl., Ex. A at 7.) During the interview, Defendant Gonzales, a social worker for Child Protective Services of the County of Santa Clara, arrived at the police station with A.F. (Id.) After his interview with Kim Fredenburg, Defendant Prolo determined that the Children should be taken into protective custody and transported to a children's shelter. (Id.)

Plaintiffs allege that, while staying in the children's shelter on the night of August 9, 2006, M.F. was molested by another child.[7]

**B.      Procedural Background**

On August 27, 2007, Plaintiffs filed this action alleging eight causes of action as follows:[8]

| Cause of Action | Plaintiffs | Defendants |
| --- | --- | --- |
| Violation of Fourth and Fourteenth Amendment rights to familial association based on a warrantless removal from custody, pursuant to 42 U.S.C. § 1983 | Matt Fredenburg and the Children | Prolo, Gonzales and Yamamura |

---

[7] (Complaint for Violation of Civil Rights, False Arrest, Intentional Infliction of Emotional Distress ¶¶ 36-38, hereafter, "Complaint," Docket Item No. 1.)

[8] Plaintiffs' purport to allege nine causes of action. However, the Eighth Cause of Action is a cause of action for battery brought by M.F. against "Doe 2." (Complaint ¶¶ 83-86.)

3

| Cause of Action | Plaintiffs | Defendants |
|---|---|---|
| Violation of Fourth Amendment right to be free from a unlawful seizure, pursuant to 42 U.S.C. § 1983 | The Children | Prolo, Gonzales and Yamamura |
| Violation of Fourteenth Amendment Right to familial association based on continued detention, pursuant to 42 U.S.C. § 1983 | Matt Fredenburg and the Children | Letona and Gonzales |
| Violation of First Amendment right of association and Fourteenth Amendment right to familial association based on divorce threats, pursuant to 42 U.S.C. § 1983 | Kim Fredenburg and Matt Fredenburg | Letona |
| False Imprisonment | The Children | Santa Clara, Letona, Gonzales, Burgan, Milpitas, Prolo and Yamamura" |
| Intentional Infliction of Emotional Distress | Kim Fredenburg, Matt Fredenburg and the Children | Prolo, Yamamura, Gonzales, Letona and Burgan |
| Battery | The Children | Prolo, Yamamura, Gonzales |
| Negligence[9] | M.F. | Gonzales and Letona |

Presently before the Court are Defendants Milpitas, Prolo and Yamamura's Motion for Summary Judgment and Plaintiffs' Motion for Summary Adjudication Against Defendant Prolo.

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[9] M.F.'s negligence claim against Gonzales and Letona is based on the allegations that on August 9, 2006 he was molested by another child while in a County of Santa Clara children's shelter. Although the parties brief the issue of whether Defendants Milpitas, Prolo and Yamamura can be liable, the Court finds that those Defendants' liability is not an issue before the Court. Plaintiffs have not brought a cause of action against those Defendants for the alleged molestation of M.F.

1  56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims
2  or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

3  The moving party "always bears the initial responsibility of informing the district court of
4  the basis for its motion . . . ." Id. at 323. "The judgment sought should be rendered if the pleadings,
5  the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue
6  as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.
7  P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading;
8  rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts
9  showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

10 When evaluating a motion for summary judgment, the court views the evidence through the
11 prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby
12 Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-
13 moving party, including questions of credibility and of the weight that particular evidence is
14 accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court
15 determines whether the non-moving party's "specific facts," coupled with disputed background or
16 contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.
17 T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case,
18 summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of
19 fact could not find for the non-moving party based on the record as a whole, there is no "genuine
20 issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

### A. Section 1983

Defendants Milpitas, Prolo and Yamamura move for summary judgment on Plaintiffs' First,
Second, Fifth, Sixth and Seventh Causes of Action on the ground that Matt Fredenburg and the
Children's constitutional rights have not been violated. (Defendants' Motion at 12-13.) In the

5

alternative, the Moving Defendants contend that Defendants Prolo and Yamamura are entitled to immunity[10] under Plaintiffs' § 1983 claim and state law claims. (Defendants' Motion at 10-18.)

Plaintiffs move for summary adjudication against Defendant Prolo as to Matt Fredenburg and the Children's First and Second Causes of Action on the grounds that there can be no genuine issue of material dispute that Defendant Prolo did not have reasonable cause to believe that the Children were in imminent danger of serious bodily injury and that Defendant Prolo did not conduct a reasonable investigation.[11] (Plaintiffs' Motion at 8, 13.)

### 1. Constitutional Violation

At issue is whether Matt Fredenburg and the Children's constitutional rights under the Fourteenth and Fourth Amendments were violated by Defendant Prolo.

The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies. Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007). Similarly, the Fourth Amendment protects children from being removed from their homes. Id. Thus, where a § 1983 claim is brought pursuant to the Fourth and Fourteenth Amendments by a parent and his children for the wrongful removal of the children from parental custody, the alleged Fourth and Fourteenth Amendment violations are analyzed under the same standard. Wallis v. Spencer, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000). The Ninth Circuit has held that officials may remove children from the custody of their parent without prior judicial authorization "only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." Wallis, 202 F.3d at

---

[10] The Moving Defendants also argue that Defendants Prolo and Yamamura are entitled to immunity under certain California statutes. However, state laws providing immunity to certain defendants are inapplicable to federal claims under § 1983. MK Ballistics Sys. v. Simpson, No. C 07-00688 RMW, 2007 WL 2022025, at *5 (N.D. Cal. Jul. 9, 2007).

[11] Plaintiffs concede that summary judgment is appropriate on the Children's Seventh Cause of Action for battery as against Defendants Prolo and Yamamura, and that Defendant Yamamura should be dismissed from the case entirely. (Opposition at 1-3.)

1138.  In addition, police cannot seize children suspected of being abused or neglected "unless reasonable avenues of investigation are first pursued, particularly where it is not clear that a crime has been–or will be–committed." Id. The existence of reasonable cause is a question of fact. Id.

In this case, the parties do not dispute that Defendant Prolo acted with the necessary reasonable cause when taking A.F. into custody after finding her in Kim Fredenburg's car and taking E.F. and M.F. into custody after discovering they had been left home alone. (Opposition at 2.) The sole dispute is whether Defendant Prolo had reasonable cause to believe that placing the Children in the custody of Matt Fredenburg would place the children in imminent danger of serious bodily injury.[12]

With respect to Matt Fredenburg, the evidence shows the following:

(1) As of August 9, 2006, a Wednesday, the Children were home schooled by Kim Fredenburg, who was their primary care taker during the day because Matt Fredenburg was away at work. (Gilbert Decl., Ex. E at 11.)

(2) After Kim Fredenburg arrived at the police station, Sergeant Candelaria called Matt Fredenburg to inform him of what had happened with Kim Fredenburg and the Children. (Powell Decl., Ex. C at 29, 32.) Candelaria testified in his deposition that he informed Defendant Prolo of his impression that Matt Fredenburg was not going to leave work to go to the police station to pick up his wife and children. (Id.)

(3) Kim Fredenburg told Defendant Prolo that Matt Fredenburg was going to be "livid" and that she believed he would refuse to come pick her up from the police station. (Gilbert Decl., Ex. E at 9, 14.) Defendant Prolo testified in his deposition that Kim Fredenburg also informed him that Matt Fredenburg had previously been charged with domestic violence and that Matt Fredenburg preferred a "controlled environment" at home. (Powell Decl., Ex. A at 85, 88-9.)

(4) Gonzales testified that she spoke with M.F., the eldest child, who informed her that Matt Fredenburg had previous knowledge of the Children being left alone. (Gilbert Decl., Ex. G at 59-60.) Gonzales informed Defendant Prolo of what M.F. told her during their interview. (Id.) Gonzales also spoke with Matt Fredenburg at the police station, but did not tell him about M.F.'s statements in an effort to protect M.F. from possible retaliation. (Id., Ex. G at 62.) In her conversation with Matt Fredenburg, he

---

[12] Although Plaintiffs mention in a footnote that "when the time comes, the Court or jury will be presented with a police department that lacks the most basic of training on the issues of familial association rights," Plaintiffs have not alleged a § 1983 claim against Milpitas under Monell v. Dep't of Soc. Serv. of the City of New York, 436 U.S. 658 (1978). (See Complaint ¶¶ 47-67.) The Complaint fails to allege any facts regarding Milpitas' wrongdoing and does not identify Milpitas as a Defendant under any cause of action. Accordingly, the Court DISMISSES Milpitas from this action.

          never corroborated M.F.'s statement that he had prior knowledge of the children being left alone. (Id., Ex. G at 63.) However, Gonzales concurred with Defendant Prolo that custody of the Children should not be given to Matt Fredenburg. (Id., Ex. G at 72.)

  (5)  Gonzales testified that she agreed that the Children faced an imminent risk of physical harm because "their father was aware of previous circumstances of the children being left unattended, he wasn't seen as a protective parent; and that he obviously . . . perhaps didn't have a plan of proper child care with the mom. So that if he didn't . . . resolve the situation before with the mom and create a plan for child care, we weren't certain that there would be a plan in place, or that the children . . . would have proper supervision." (Gilbert Decl., Ex. G at 70-71.)

Based on this evidence, a genuine issue of material fact remains as to whether Defendant Prolo had reasonable cause to remove the Children without judicial authorization. For example, it is unclear from the evidence presented when Defendant Prolo consulted with Gonzales. Thus, there is an issue of fact regarding whether Defendant Prolo knew, at the time that he decided to keep the Children in custody, that Matt Fredenburg had previous knowledge that the Children had been left unattended. (See, e.g. Gilbert Decl., Ex. G at 70-71.) In addition, Defendant Prolo testified that he never spoke with Matt Fredenburg, M.F. or the grandparents, who were all present at the police station, regarding prior instances of the Children being left unsupervised or prior instances of domestic violence. (Powell Decl., Ex. A at 88-89, 129-30.)

     Defendant Prolo further testified that he did not search police records for any domestic violence charges against Matt Fredenburg. (Id., Ex. A at 85, 89.) There is also no evidence that Defendant Prolo attempted to determine whether Matt Fredenburg had a plan for supervising the Children the following day. A police officer is not required to exhaust every avenue of investigation once reasonable cause is established, including an interview of a parent who may be willing to corroborate statements made by a child. See Burke v. County of Alameda, No. C 06-04533 SBA, 2008 U.S. Dist. LEXIS 1860, at *13-14 (N.D. Cal. Jan. 10, 2008). However, based on the evidence presented, a juror could find that a reasonable officer would have pursued other avenues prior to making a determination as to the Children's imminent harm and refusing to return them to the parent who has not been charged with child endangerment.

The Court finds that there is a genuine issue of material fact concerning whether Defendant Prolo violated Matt Fredenburg and the Children's constitutional rights. Accordingly, neither party is entitled to summary judgment these constitutional claims.

**2. Qualified Immunity**

The Moving Defendants contend that, even if Defendant Prolo violated Matt Fredenburg and the Children's constitutional rights, he is entitled to qualified immunity.[13]

Qualified immunity is a defense against liability available to government officials who perform executive and administrative functions and who are sued for monetary relief in their personal capacities. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The doctrine shields public officers from "undue interference with their duties and potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982); Brosseau v. Haugen, 543 U.S. 194 (2004). To determine whether a public official is entitled to qualified immunity from § 1983 liability, a court must consider (1) whether the plaintiff has identified a specific federal law or constitutional right that allegedly has been violated; (2) whether that right was so clearly established as to alert a reasonable official to its parameters; and (3) whether a reasonable officer could have believed his or her conduct was lawful. See Sweaney v. Ada County, 119 F.3d 1385, 1388 (9th Cir. 1997) (citing Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996)). Where plaintiff has established the existence of a "clearly established" right, the defendant has the burden of proving that, even if he violated the plaintiff's constitutional rights, his actions were reasonable. Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).

Here, there is no dispute that clearly established rights are at issue. Instead, the parties' dispute centers on whether Defendant Prolo could have reasonably believed that his conduct was lawful. As evidence that Defendant Prolo could have reasonably believed that he acted lawfully, the Moving Defendants present the County of Santa Clara Child Abuse Protocol and contend that

---

[13] (Defendants' Motion at 15-17; Defendant Officer Pete Prolo's Memoranda of Points and Authorities in Opposition to Plaintiffs Matt Fredenburg, Minors M.F., E.F., and A.F.'s Motion for Summary Judgment at 14, Docket Item No. 62.)

9

Defendant Prolo's conduct fell within both the Protocol and Cal. Welf. & Inst. Code § 305. (Defendants' Motion at 9, 12; Gilbert Decl., Ex. H.) Upon examination, the Court finds that the Protocol and § 305 simply restate the reasonable cause standard under § 1983.[14] The Moving Defendants do not provide an expert opinion, or any other evidence, indicating what a reasonable officer under these circumstances would have done. Thus, the Court finds that there are factual issues that must be resolved before a finding can be made as to Defendant Prolo's entitlement to qualify immunity.

In sum, the Court DENIES Plaintiffs' Motion for Summary Adjudication Against Defendant Prolo and DENIES the Moving Defendants' Motion for Summary Judgment as to Plaintiffs' First Cause of Action for violation of Matt Fredenburg and the Children's Fourteenth Amendment rights, and Second Cause of Action for violation of the Children's Fourth Amendment rights against Defendant Prolo, without prejudice to be renewed upon resolution of the factual issues identified by the Court.

**B.     False Imprisonment and Intentional Infliction of Emotional Distress**

The Moving Defendants move for summary judgment on Plaintiffs' false imprisonment and intentional infliction of emotional distress claims on the grounds that Defendant Prolo is entitled to immunity under Cal. Gov't Code §§ 820.2 and 821.6 and that Plaintiffs have insufficient evidence to show each element of their claims. (Defendants' Motion at 19-20.)

Under California law, a claim for false imprisonment requires plaintiffs to show (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time. Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485, 495 (2000). A

---

[14] Under Cal. Welf. & Inst. Code § 305, an officer may take a child into custody without a warrant when he has "reasonable cause for believing that the minor [has suffered, or there is a substantial risk that the child will suffer, serious physical harm], and, in addition, that the minor has an immediate need for medical care, or the minor is in immediate danger of physical or sexual abuse, or the physical environment or the fact that the child is left unattended poses an immediate threat to the child's health or safety." The Child Abuse Protocol instructs that, among other things, an officer is authorized to take a child into custody without a warrant under the same circumstances as described in Cal. Welf. & Inst. Code § 305. (Gilbert Decl., Ex. H at 3.)

claim for intentional infliction of emotional distress requires (1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard to the probability of causing, emotional distress, (2) the plaintiffs suffered severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by defendants' outrageous conduct. Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991).

Under Cal. Gov't Code § 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Immunity under § 821.6 extends beyond claims for malicious prosecution, and extends to claims for intentional infliction of emotional distress. Gillan v. City of San Marino, 147 Cal. App. 4th 1033, 1048 (2007). Under Cal. Gov't. Code § 820.2, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." However, immunity against state law claims under §§ 820.2 and 821.6 does not apply to claims for false imprisonment. Cal. Gov't Code § 820.4.

In this case, state law immunity only applies to Plaintiffs' intentional infliction of emotional distress claim. The parties do not dispute that Defendant Prolo acted according to discretion vested in him under California. law. Therefore, the Court finds that Defendant Prolo is entitled to discretionary immunity from Plaintiffs' claim for intentional infliction of emotional distress. With respect to Plaintiffs' false imprisonment claim, the parties primarily dispute the lawfulness of Defendant Prolo's decision to keep the Children in state custody, and present the same evidence discussed above with regard to Matt Fredenburg and the Children's § 1983 claims. In light of the Court's finding that genuine issues of material fact remain as to Plaintiffs' § 1983 claims, the Court similarly finds that summary judgment is inappropriate regarding Plaintiffs' false imprisonment claim against Defendant Prolo.

Accordingly, the Court GRANTS the Moving Defendants' Motion for Summary Judgment as to Plaintiffs' Sixth Cause of Action for Intentional Infliction of Emotional Distress against Defendant Prolo, and DENIES the Moving Defendants' for Summary Judgment as to Plaintiffs' Fifth Cause of Action for False Imprisonment against Defendant Prolo.

## V. CONCLUSION

The Court DENIES Plaintiffs' Motion for Summary Adjudication Against Defendant Prolo. The Court GRANTS in part and DENIES in part Defendants' Milpitas, Prolo and Yamamura's Motion for Summary Judgment as follows:

(1) The Court GRANTS summary judgment as to Plaintiffs' Sixth Cause of Action for Intentional Infliction of Emotional Distress against Defendant Prolo;

(2) The Court DISMISSES Defendants Yamamura and City of Milpitas;

(3) The Court DENIES summary judgment as to Plaintiffs' First and Second Causes of Action under § 1983, and Plaintiffs' Fifth Cause of Action for False Imprisonment against Defendant Prolo.

Dated: June 4, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

David Michael Rollo david.rollo@cco.sccgov.org
Dennis R. Ingols dingols@rrpassociates.com
Dennis R. Ingols dingols@rrpassociates.com
Douglas D. Durward Doug@durwardlaw.com
Kevin E. Gilbert kgilbert@meyersnave.com
Kimberly E. Colwell kcolwell@meyersnave.com
Melissa R. Kiniyalocts melissa.kiniyalocts@cco.co.scl.ca.us
Robert Ross Powell rpowell@rrpassociates.com
Tricia L. Hynes thynes@meyersnave.com

**Dated:  June 4, 2009**               **Richard W. Wieking, Clerk**

                                       **By:  /s/ JW Chambers**
                                              **Elizabeth Garcia**
                                              **Courtroom Deputy**